**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

| | | |
|---|---|---|
| **TD BANK, N.A.,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Case No. 1:12 cv 099** |
| | ) | |
| **KEVIN WAYNE BURKHALTER,** | ) | |
| | ) | |
| **Debtor-Appellee.** | ) | |
| _____ | ) | |
| | ) | |
| **TD BANK, N.A.,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Case No. 1:12 cv 100** |
| | ) | |
| **COUNTRY FIELD GREENHOUSE
& GARDEN, INC.** | ) | |
| _____ | ) | |

These two related bankruptcy proceedings arise from the operation of a family farm by Debtor Kevin Wayne Burkhalter (Burkhalter) and his corporation, Country Field Greenhouse & Garden, Inc. (Country Field) (together referred to as the Debtors). Debtors executed two promissory notes secured by deeds of trust on different parcels of real property. The Debtors defaulted on both notes, and the holder of the notes, TD Bank (the

Bank), moved to foreclose. Debtors then filed bankruptcy proceedings pursuant to Chapter 12.

Debtors filed their proposed Chapter 12 Plans (the Plan). [Bankruptcy Case 11-10646[1] Doc. 14; Bankruptcy Case 11-10647 Doc. 14]. Within the requisite time TD Bank filed objections to confirmation in both proceedings. [B Doc. 20; CFG Doc. 19]. The objections included, *inter alia*, a "Summary of Objections" that stated the basis of the objections to be that "(1) the Plan is not feasible, (2) the Plan does not provide Bank with as much as Bank would receive under liquidation, (3) the Plan is not fair and equitable to Bank." [Id. at 3]. More particularly, TD Bank asserted that "while the Plan states that unsecured creditors will be paid in full, it fails to provide for payments of a value, as of the effective date of the Plan, equal to the allowed amount of the unsecured claims"; "the Plan contains only speculative information evidencing the Debtor's ability to generate adequate funds through its continued business operation"; and "the Plan does not provide Bank with as much value as it would receive on account of its claims under Chapter 7 liquidation." [Id. at 3-4].

---

[1] Citations to the record are as follows: Citations to the record in the Bankruptcy Case of Debtor Burkhalter, Bankruptcy Case 11-10646, have the prefix letter B before the document reference. Citations to the record in the Bankruptcy Case of Debtor Country Field Greenhouse, Bankruptcy Case 11-10647, have the prefix letters CFG before the document reference. Citations without a prefix are to the record in this Court.

The Bankruptcy Court conducted a hearing on confirmation of the Plan. At the hearing the Bank focused on a specific argument that the Plan violated the requirements of 11 U.S.C. §1225(b)(1)(B) in that as of the effective date of the Plan it fails to "provide[ ] that all of the debtor's projected disposable income to be received in the three-year period, . . . beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." Id. Counsel for the Bank more specifically explained that the Debtors were proposing to pay a total amount of only $42,890 toward all classes of debt (excluding taxes and administrative expenses), but estimated disposable income of $58,344 during the same period, leaving nearly $15,500 unaccounted for. [Doc. 5 at 13, B Doc. 43 (transcript of hearing) at 8].

The Bankruptcy Court, however, made a finding precisely tracking the statutory language that the Plan "provides that all of the debtor's projected disposable income to be received in the three year period . . . beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." [B Doc. 36 at 3]. In this appeal the Bank argues that the record is insufficient to support this finding, and therefore the confirmation of the Plan must be reversed.

3

Rather than addressing the substance of the Bank's argument, the Debtors simply argue that there was no proper objection before the Bankruptcy Court, and thus any potential challenge to the Plan based on the asserted failure was waived. [Doc. 6 at 5]. Therefore, the Court will turn first to the question of whether the Bank has preserved the objection it now advocates. The Debtors argue that the objection is insufficient to preserve this issue because "the only potential and pertinent objection provided in the writing [objection] appears in the last two paragraphs of appellant's paper writing and refers to the secured nature and value of the collateral, 11 U.S.C. §506(b), and the term for payment to the secured real property debt, believing that there was a limitation under §1222(c) to five (5) years." [Doc. 6 at 10].

The Debtors cite no authority for what degree of notice is required to preserve an objection to confirmation. They rely on <u>Fawcett v. United States</u>, 758 F.2d 588 (11th Cir. 1985); <u>United States v. Norton</u>, 717 F.2d 767 (3d Cir. 1983); and <u>Lawrence Tractor Co. v. Gregory</u>, 705 F.2d 1118 (9th Cir. 1983). These cases, however, pertain to situations where no objection to the plan was filed at all. There is apparently a paucity of legal authority as to what degree of notice is required to preserve an objection to confirmation of a plan. Common sense, however, would dictate that notice

4

is sufficient if it allows the opposing side a fair warning and a reasonable opportunity to be prepared to address the issue. See Fawcett, 758 F.2d at 591 (plan proposing to pay secured creditors in full was insufficient to put secured creditor on notice that debtor was not proposing to pay the interest portion of the secured claim but only the principal portion).

It is undisputed that the Bank filed a lengthy and involved objection. As outlined above, its complaints fell into several categories, including the assertion that the Plan failed to provide the Bank with as much as it would receive in a liquidation, and that the Plan was not fair and equitable to the Bank. [B Doc. 20 at 3]. It goes on to state that "Bank reserves the right to raise and assert additional objections at the hearing on this matter." [Id. at 5]. There can be no doubt that the Debtors understood that the Bank strongly opposed the confirmation of the Plan. The written objection, however, nowhere claimed that the Plan failed to comply with the provisions of 11 U.S.C. §1225(b)(1)(B) as a basis for that opposition. This is apparently the reason for the Debtors' assertion that no *valid* objection was filed.

The Court concludes as a matter of law, however, that the Bank's objection was sufficient to put the Debtors on notice that they had to demonstrate their Plan's compliance with §1225(b)(1). The Bank objected

5

to the Plan, in part, on the grounds that it was not "fair and equitable" to the Bank. Section 1225(b)(1) articulates a specific statutory standard of fairness and equity to unsecured creditors that all plans must meet. The statute reads in pertinent part

> If . . . the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> > (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim;
> >
> > (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period . . . beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or
> >
> > (C) the value of the property to be distributed under the plan in the 3-year period . . . beginning on the date that the first distribution is due under the plan is not less than the debtor's projected disposable income for such period.

11 U.S.C. §1125(b)(1). In other words, in order for this fairness and equity standard to be met with regard to an unsecured creditor a plan must call for 1) paying that creditor in full (subsection A); 2) using all the debtor's disposable income for paying creditors during the period of the plan (subsection B); or 3) distributing to the creditors value equivalent to alternative 2 (subsection C). The Bank's general objection regarding the

6

Plan's fairness and equity therefore put the Debtors on notice that they at least needed to defend whether their Plan met this statutory standard of fairness and equity.

Moreover, even if the Bank's filing had not put the Debtors on notice the Bankruptcy Rules and the statutory language itself are sufficient to put the Debtors on notice that they had to show their Plan's compliance with §1225(b)(1). Bankruptcy Rule 3015 makes clear that the filing of the objection to confirmation initiates a contested matter. The issue is then before the Court whether the Plan complies with the law and can be confirmed. The objection is addressed and disposed of in the context of a confirmation hearing. In other words, the Bankruptcy Court can only confirm a plan in one of two ways. If there is no objection at all to the plan it can be confirmed as an uncontested matter. On the other hand, if any objection is filed the Court must conduct a confirmation hearing. Fed. R. Bankr. P. 3015(f). Therefore, the Bank's objection is facially sufficient to require the Bankruptcy Court to make a determination as to whether the Plan should be confirmed.

In addressing this question, the Bankruptcy Court is confronted with the language of §1225(b)(1), which reads that "the court *may not approve the plan unless*" the plan falls into one of the fairness and equity categories

7

of §1225(b)(1). There is nothing in the statute to indicate that a challenge regarding §1225(b)(1) must be a basis of the objection asserted, only that an objection must have been filed, thereby setting the issue of confirmation before the Court as a contested matter. Compliance with one of the three provisions in that section is a statutory condition precedent to confirmation of the plan. The standards of §1225(b)(1) are not listed as grounds on which objections may be filed, but rather constitute an element that must be addressed in all contested Chapter 12 confirmations. Since the Bank's objection triggered the hearing on a contested confirmation pursuant to Rule 3015, the Debtors were on notice that one of the three alternatives required by §1225(b)(1) must be met in order for the Plan to be confirmed. Since the Plan proposes neither paying unsecured debts in full nor distributing any alternative value in lieu of payment, §1225(b)(1)(A) and (C) are inapplicable. The only question is whether the Plan complies with subsection B. Debtors' counsel addressed the §1225(b)(1) argument at the hearing. The Bankruptcy Court found "that all the debtor's disposable income to be received in the [relevant period] . . . will be applied to make payments under the plan," [Case 11-10646 Doc. 36 at 3 ¶2.A.(1)(s)], notwithstanding the Bank's objection. In short, the record shows that everyone understood that compliance with §1225(b)(1) was at issue. For

these reasons the Court concludes as a matter of law that the Bank's objection was sufficient to put the Debtors on notice and to preserve its argument that the Plan does not comply with §1225(b)(1)(B).

Moving on to the question of whether the Plan complies with §1225(b)(1)(B), the parties apparently read the evidence very differently. The Bank asserts that there is a discrepancy between the total of payments and the Debtors' projected income that leaves some $15,500 of disposable income unaccounted for, a fact which if true would violate §1225(b)(1)(B). [B Doc. 43 at 9]. The Debtors argue, on the other hand, that these funds are accounted for by the estimate for the payment of taxes. [Id. at 12] ("You can't leave out the Department of Revenue and the IRS."). The Bank, however, expressly included the taxes in its calculation. [Id. at 9].

Unfortunately, there is nothing in the Bankruptcy Court's order confirming the Plan that explains how this discrepancy was resolved in favor of the Debtors. The order simply says "that all the debtor's disposable income to be received in the [relevant period] . . . will be applied to make payments under the plan," [B Doc. 36 at 3 ¶2.A.(1)(s)], and that "[t]he plan provides that an appropriate portion of the debtor's disposable income over the [relevant period] . . . will be applied to make payments under the plan." [B Doc. 36 at 4]. These are simply boilerplate

9

conclusions. It is impossible to tell how the Bankruptcy Court resolved the factual issue in favor of the Debtors. The order provides nothing for this Court to review. "If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court . . . must remand the case to the bankruptcy court for the necessary factual determination." In re Sublett, 895 F.2d 1381, 1384 (11th Cir. 1990) (quoting Wegner v. Grunwaldt, 821 F.2d 1317, 1320 (8th Cir. 1987).

Since the Court cannot tell how the Bankruptcy Court resolved this factual discrepancy, the order of confirmation must be reversed and the matter remanded for further findings.

The Bank also challenges the findings of the Bankruptcy Court regarding the compliance with §1225(a)(3) and (6). Specifically the Bankruptcy Court found as fact that the Plan "provides, as of the effective date of the plan, that the value of the property to be distributed under the plan to allowed unsecured claims on account of such claim is not less than the net liquidation value of the debtor's property," [Case 11-10646 Doc. 36 at 3 ¶2.A.(1)(r)] (the Liquidation Finding), and "Debtor will be able to make all payments under the plan and to comply with the plan as required in 11 USC §1222(a) and 1225(a)(6)." [Id. at 4 ¶ 7] (the Feasibility Finding). The Bank argues that these findings are unsupported by the record.

Case 1:12-cv-00100-MR   Document 7   Filed 02/21/13   Page 10 of 12

First, it must be noted that neither §1225(a)(3) nor (a)(6) contains the language found in §1225(b)(1) that makes compliance with either of these provisions a condition precedent to confirmation. Therefore, the Bank must have put the Debtors on adequate notice that it was challenging confirmation on this basis. The Bank, however, clearly set out in its Objection that the Plan failed to meet the liquidation test of §1225(a)(3) [2] and that it was not feasible. [B Doc. 20 at 4 ¶ 19, and at 3 (Summary of Objections)]. The transcript of the confirmation hearing reveals that the Bank did not mention the liquidation analysis in its argument. The Bankruptcy Court nonetheless made findings that the Plan complied. [B Doc. 36 at 3 ¶2.A.(1)(r)]. As with the disposable income finding, the Liquidation Finding is so general that there is no way for this Court to tell how the Bankruptcy Court resolved the factual dispute. It may have found in favor of the Debtors because it deemed the objection abandoned by the Bank's failure to argue it at the hearing, or it may have relied on some facts set out in the record to find that the Plan meets the payment standards of §1225(a)(3). For these reasons, on remand the question of whether the Bank preserved this issue must be addressed. If the Bankruptcy Court

_____

[2] The standard of paying an amount at least equal to the liquidation value is found in §1225(a)(4) rather than (a)(3). The Bank, however, argues that the failure to propose payment of the liquidation value manifests that the Plan was not proposed in good faith in violation of (a)(3).

Case 1:12-cv-00100-MR   Document 7   Filed 02/21/13   Page 11 of 12

concludes that it was preserved, then the issue of the Plan's compliance with §1225(a)(3) must be resolved with proper findings – as to the payment of the liquidation value and as to good faith.

The Feasibility Finding in the Order of Confirmation is also very general, and gives no hint as to how the Bankruptcy Court reached its conclusion. Since this issue is so intertwined with the analysis of the same projected income and expense figures that pertain to the §1225(b)(1)(B) issue on which remand has already been granted it will necessarily be a subject of the Bankruptcy Court's inquiry. Therefore, this finding is likewise reversed.

**IT IS THEREFORE ORDERED** that the Order Confirming Chapter 12 Plan in each of these cases is **REVERSED** and these matters are **REMANDED** for further proceedings consistent with this decision.

Signed: February 20, 2013

Martin Reidinger
United States District Judge

12